IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARCUS HENRY,

                Plaintiff,

v.

ANGELA STETTER and JAMIE BARKER,[1]

                Defendants.

ORDER

17-cv-673-jdp

---

Plaintiff Marcus Henry, appearing pro se, is an inmate at Green Bay Correctional Institution. He alleges that when he was incarcerated at New Lisbon Correctional Institution, defendant nurses Angela Stetter and Jamie Barker intentionally failed to get him prompt treatment for surgical stitches that had come undone, causing him a more painful recovery.

Defendants have filed a motion for summary judgment, stating that Henry's stitches remained intact until they were removed two weeks after the surgery. But Henry maintains that both Stetter and Barker told him that some of the stitches had come undone. And it is undisputed that his incision reopened shortly after the stitches were removed. Because I conclude that a reasonable jury could conclude that defendants harmed Henry by ignoring the "popped" stitches, I will deny defendants' motion for summary judgment.

UNDISPUTED FACTS

Henry did not follow this court's procedures by preparing a document in which he responded to each of defendants' proposed findings of fact. *See* Dkt. 17, at 14–20 (explaining

---

[1] I have amended the caption to include both defendants' first and last names.

court's summary judgment procedures). But the dispute here is relatively simple, and Henry has provided a declaration explaining his version of events, Dkt. 37, so I will accept his declaration as his response. I draw the following facts from defendants' proposed findings and Henry's declaration; the facts are undisputed unless otherwise noted.

Plaintiff Marcus Henry was an inmate at the New Lisbon Correctional Institution (NLCI) during events at issue in this lawsuit. Defendants Jamie Barker and Angela Stetter both held the title "Nurse Clinician 2" at NLCI.

On February 8, 2013, Henry had a cyst removed from his back. The wound site was closed with about 10 sutures.[2] Two or three hours later, another prisoner told Henry that blood was soaking through the back of his shirt. Henry returned to the Health Services Unit (HSU).

Stetter removed the dressing and looked at the wound. She says that she did not find active bleeding or that any stitches had become loose or had broken or "popped." But Henry says that Stetter told him that about three stitches had popped, and that the doctor had gone home for the day. Henry says that he told Stetter to call the doctor and tell him to come back, but she said no.

Stetter asked Barker to look at the wound. Barker says that she looked at the wound and also determined that no stitches had broken or popped. Henry says that Barker stated that it "look[ed] as if a couple at the bottom popped." Dkt. 37, at 2, ¶ 11. Henry says that he again asked for the doctor to come back to re-stitch him, but that Stetter and Barker talked with each other and decided that they would not call the doctor back, and that Henry could come

---

[2] The parties use "stitches" and "sutures" interchangeably, so I will too.

back tomorrow when the doctor was in. Defendants applied new dressing and Henry was sent back to his unit.

Defendants did not record the February 8 incident in any treatment notes. They acknowledge that a nurse would usually record this type of meeting in the prisoner's chart. Defendants say that the omission was not intentional.

Henry says that he went to the HSU the next day, February 9, and Stetter and Barker told him that it was too late to re-stitch him because doing so would risk infection; instead he would have to have the wound packed with gauze twice a day. There is no record of this visit in Henry's treatment notes, and Stetter and Barker do not say anything about seeing him on February 9. I infer that they dispute Henry's account on this point.

On February 10, Nurse Toni Johnson saw Henry in the HSU for a dressing change. Nurse Johnson recorded in Henry's chart that the suture line had bruising but that the sutures were intact. This means that there were no loose, popped, or broken stitches. Nurse Johnson washed the area and re-dressed the wound. A plan was made to have the dressing re-checked the next day.

On both February 11 and 14, Stetter checked Henry's dressing and noted that the incision site was clean, dry, and intact. Stetter did not observe any popped or broken stitches or sign of infection.

On February 20, Henry saw Johnson for the removal of the sutures. Johnson noted that the sutures were removed without difficulties. She found no signs or symptoms of infection. The wound was closed and healed.

On February 21, Henry was seen by Nurse Koreen Frisk because his wound partly opened. Henry says that he was sitting and reading when he felt the wound rip open. Frisk

noted a 1 by 2 centimeter open area. Within an hour, Henry saw Dr. Lewandowski. Either Lewandowski or Frisk cleaned the area, applied steri-strips to the closed part of the incision to keep it from opening further, and packed the open area with gauze and dressed the wound.

On February 22, Henry met with Nurse Johnson. The dressing was saturated with bloody drainage. Henry was upset about the reopening of his wound and wanted to know her name and the names of the nurses who had seen him the day after his surgery. Johnson contacted Dr. Lewandowski to have the dressing removed for assessment of the wound. No signs or symptoms of infection were noted. The wound was re-dressed and HSU nurses continued to change the dressing and monitor the wound.

ANALYSIS

Defendants have filed a motion for summary judgment. To succeed on their motion, defendants must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment should be granted to the moving party. *Celotex*, 477 U.S. at 322.

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).

A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer*, 511 U.S. at 847. To be considered "deliberately indifferent," an official must know of and disregard "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

Defendants concede that popped surgical stitches can be a serious medical need. But they contend that Henry's stitches were intact when he met with them on February 8, 2013, and that medical staff confirmed that the stitches were intact over the next two weeks.

Henry disputes defendants' account, saying that when he came to them, bleeding through his shirt, they both told him that stitches had indeed popped. Dkt. 37, ¶¶ 6–11. So I conclude that there is a genuine factual dispute over whether Henry's stitches were intact on February 8.

On February 10, non-party nurse Johnson recorded in Henry's treatment notes that his stitches were intact. Henry did not directly respond to defendants' proposed facts, including the facts about the February 10 visit. Dkt. 32, ¶¶ 23–24. Neither his declaration nor his brief

directly responds to Johnson's account of the February 10 visit and the status of his wound at that time. But Henry could have responded that the facts in paragraphs 23 and 24 were disputed, citing the declaration he filed for evidence that Stetter and Barker said that his stitches were popped on February 8, and that his wound reopened shortly after his stitches were removed. Giving Henry the leeway he is entitled to as a pro se litigant, I conclude that the facts proposed by defendants that Henry's stitches were intact from February 10 to February 20 are also genuinely disputed by Henry's declaration. Of course, Henry has his work cut out for him at trial on this point. He does not explain why Johnson would note that the stitches were intact when they weren't. So, at trial, he will have to convince the jury that his version of events is correct and defendants' is wrong, even though defendant's testimony could be corroborated by Johnson and her treatment notes. This kind of credibility contest is not appropriately decided on summary judgment, even if the odds are not in Henry's favor.

That leaves the question of deliberate indifference. Defendants say that no reasonable jury could conclude that they were deliberately indifferent to Henry's serious medical need because there is no evidence that they were aware that their actions on February 8, 2013, were likely to aggravate Henry's recovery or make his treatment more painful. But they have already conceded that popped stitches can be a serious medical need. And Henry not only says that defendants failed to call the doctor the night they both saw the popped stitches, he also says that they misled him into thinking that he could see the doctor the next day, only to turn him away the next day, saying that it was then too late to re-stitch him. Dkt. 37, ¶¶ 13–15. This suggests that they intentionally chose not to pursue re-stitching. Also, it is undisputed that defendants did not record their February 8 meeting with Henry, which could support an inference that they attempted to conceal their response to the popped stitches. That is enough

to raise a reasonable inference that defendants were deliberately indifferent to his serious medical need.

Defendants don't phrase it quite this way in their briefing, but there is also the question of whether their actions harmed Henry. Henry says that on February 9, defendants told him that he would have to undergo twice-daily gauze packing. I do not take Henry to be saying that he actually received gauze packing before his wound reopened on February 21, because he does not suggest in his declaration or brief that he received that treatment, and the medical records do not show that treatment either. Nor do I take him to be saying that defendants were deliberately indifferent by failing to gauze-pack the wound during this time. Rather, he says that defendants' deliberate indifference in failing to address the popped stitches caused his wound to heal more painfully and more slowly, which in turn caused it to rip open on February 21, leading to the painful gauze-packing treatment.

Defendants say that there is no evidence that they are at fault for the incision ripping open, and that it is "not uncommon" for surgical wounds to reopen after stitches are removed. This argument invokes expert opinion that is not properly before the court. And, in any case, if a jury believes Henry's version of events, then even as laypeople they could infer that defendants' decision to ignore the popped stitches led to an increased risk of the wound healing poorly and reopening later.

I conclude that Henry's declaration is enough to raise disputed issues of material fact regarding his Eighth Amendment claims. Accordingly, I will deny defendants' motion for summary judgment and this case will proceed to trial.

ORDER

IT IS ORDERED that defendants' motion for summary judgment, Dkt. 30, is DENIED.

Entered April 25, 2019.

        BY THE COURT:

        /s/

        _____
        JAMES D. PETERSON
        District Judge